**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

REAL PROPERTY LOCATED AT 19650 ROAD 232, STRATHMORE, CALIFORNIA, TULARE COUNTY; APN 215-060-002, INCLUDING ALL APPURTENANCES AND IMPROVEMENTS THERETO,

Defendant.

**1:09-cv-1659 AWI GSA**

**FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFF'S MOTION TO STRIKE THE CLAIM AND ANSWER OF LUZ VILLALVAZO AND RECOMMENDING THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED**

**(Doc. 5)**

**INTRODUCTION**

In this *in rem* forfeiture action, Plaintiff United States of America (the "Government" or "Plaintiff") filed a Motion to Strike the Claim and Answer of Luz Villalvazo.[1] (Doc. 47). In the motion, the government also seeks an entry of default judgment against Luz Villalvazo and a final judgment of forfeiture against all known and unknown potential claimants to real property located

[1] Throughout this civil action, Luz Villalvazo's last name has been spelled as Villanvazo and Villalvazo. For uniformity purposes, the Court will use the spelling of Luz Villalvazo.

at 19650 Road 232, Strathmore, California, Tulare County, APN 215-060-002 ("defendant property"). No opposition to the Government's motion was filed. The matter was taken under submission without oral argument pursuant to Local Rule 230(g) and the hearing set for this matter was VACATED. For the reasons set forth below, the Court RECOMMENDS that Plaintiff's motions be GRANTED.

**FACTUAL BACKGROUND**

The Verified Complaint for Forfeiture *In Rem* (hereafter "Complaint") filed on September 17, 2009, alleges that the defendant property was used or intended to be used in any manner or part to commit or facilitate the commission of a violation of 21 U.S.C. § 841 *et seq*. and is therefore subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7). (Doc. 1 at ¶ 1).

More specifically, on April 2009, narcotics detectives from the Tulare County Sheriff's Office ("TCSO") received information from a credible reliable informant ("CRI") regarding the illegal narcotics trafficking activities of Ramon Contreras (hereafter "Contreras") and the Contreras Drug Trafficking Organization ("DTO"). (Doc. 1 at ¶ 5). The CRI stated s/he has known Contreras for several years, had bought methamphetamine from him in the past, and identified that the Contreras DTO is responsible for the distribution of pound-quantities of crystal methamphetamine in the Lindsay, Porterville, and Tulare cities in California. *Id*.

The Complaint alleges that six undercover purchases of methamphetamine between Contreras and the CRI and/or an undercover detective ("UC") occurred between April 7, 2009 and May 19, 2009.[1] Subsequently, on June 12, 2009, the UC was again utilized for the undercover purchase of four ounces of crystal methamphetamine from Contreras for $2,600.00. (Doc. 1 at ¶ 24). Contreras instructed the UC to meet at Contreras' 1360 E. Fir residence in approximately one

---

1 These transactions did not occur at the defendant property and will not be outlined in detail here. The allegations related to these transactions can be found at pages 2 through 7 of Verified Complaint. (Doc. 1, pgs. 2-7).

hour. *Id*. At approximately 1:35 p.m., surveillance observed Contreras arrive at a residence located at 807 Lafayette in Lindsay, exit the vehicle, and enter the residence. (Doc. 1 at ¶ 25).

At approximately 1:42 p.m., the UC contacted Contreras by cellular telephone who instructed the UC to meet him at his residence. *Id*. At approximately 1:46 p.m., surveillance observed the UC arrive at Contreras' 1360 E. Fir residence, exit the vehicle, approach the residence and make contact with an adult Hispanic female. *Id*. A short time later, Contreras arrived. (Doc. 1 at ¶ 26). A Hispanic female adult, later identified as Luz Villalvazo, and two children then exited the residence. *Id*. Villalvazo and the children walked approximately 100 meters to the west of the Fir Avenue residence, turn around, and walked 100 meters to the east of the residence. *Id*. This pattern was repeated for approximately six to eight minutes at which time Villalvazo yelled out, "All clear," to Contreras. *Id*. Contreras then exited the residence and approached the UC. *Id*. At approximately 1:57 p.m., the UC departed the area to a predetermined location and relinquished a plastic baggie containing 114 grams of crystal methamphetamine. (Doc. 1at ¶ 27).

On June 27, 2009, the UC was again utilized for the undercover purchase of four ounces of crystal methamphetamine from Contreras for $5,200.00. (Doc. 1 at ¶ 28). At approximately 11:54 a.m., surveillance observed a blue Dodge Truck parked in the driveway of the defendant property. *Id*. At approximately 12:09 p.m., surveillance observed Contreras enter the blue Dodge Truck, depart from the defendant property, and enter Contreras Furniture store. *Id*. At approximately 12:17 p.m., the UC contacted Contreras by cellular telephone and arranged for the exchange of four ounces of methamphetamine for $5,200.00. (Doc. 1 at ¶ 29). Shortly thereafter, surveillance observed Contreras depart from the furniture store in a blue Dodge truck and travel to 23552 Avenue 188, Strathmore, California, exit the vehicle, and enter the residence. *Id*. Several minutes later, Contreras exited the residence and departed in the blue

Dodge truck arriving then at a residence located at 104 Oxford in Lindsay, California, exit the vehicle and enter the residence. *Id*. Shortly thereafter Contreras departed from the residence in the blue Dodge truck and traveled to the defendant real property. *Id*.

At approximately 2:28 p.m., Contreras called the UC and arranged a meeting at 1360 E. Fir. (Doc. 1 at ¶ 30). At approximately 3:04 p.m., the UC arrived at the 1360 E. Fir residence and made contact with Contreras. *Id*. Following the transaction with Contreras, the UC arrived at a predetermined location and relinquished a Ziploc baggie containing crystal methamphetamine. (Doc. 1 at ¶ 31). On July 27, 2009, a call to Cricket/Leap telecommunications by Contreras was monitored, where Contreras requested the service provider change his cellular telephone number. (Doc. 1 at ¶ 32). Shortly thereafter, Cricket/Leap communications confirmed Contreras changed his cellular telephone number from (559) 756-0716 to (559) 756-3793. *Id*. A Title III wiretap was authorized for the interception of wire communications for (559) 756-3793. *Id*.

On August 28, 2009, at approximately 3:00 p.m., the UC was again utilized for the purchase of a half-pound of crystal methamphetamine from Contreras for $10,000.00 in prerecorded buy funds. (Doc. 1 at ¶ 33). At approximately 3:53 p.m., Contreras placed a call to an individual who identified himself as Lopez who was later identified as Jorge Yovani Bravo (hereafter “Bravo”).[1] *Id*. Contreras asked Bravo how many "chickens there are" to which Bravo responded "four." *Id*. Based on knowledge and experience, detectives believe that when Contreras was speaking with Bravo, he was discussing narcotics in code to avoid detection by law enforcement. *Id*. The "four chickens" refers to a specific amount of narcotics (i.e., four ounces, four pounds, or four packages of crystal methamphetamine). *Id*. Surveillance then

---

[1] The Court takes judicial notice of the fact that Jorge Yovani Bravo is also a co-defendant in the related federal criminal case of *United States v. Ramon Contreras*, *et al.*, 1:09-CR-00350-AWI. Jorge Yovani Bravo pled guilty to a violation of 21 U.S.C. § 843(b) – Using a Communication Facility to Facilitate the Commission of a Felony, and was sentenced to 48 months in custody and 12 months of supervised release.

observed a silver Ford truck, registered to Bravo, arrive at the defendant property and park in the driveway. (Doc. 1 at ¶ 34). Bravo then entered the defendant property. Shortly thereafter, he exited from the rear of the property to meet with Contreras at the pool. *Id*. Bravo then exited the defendant property with a large grocery bag and entered the silver pickup. *Id*. Surveillance observed Contreras exit the defendant property, walk to the passenger side of Bravo's vehicle, and place his arms and elbows on the window seal of the vehicle, and engage Bravo in conversation. *Id*. At approximately 4:13 p.m., the silver pickup departed the area and traveled to a nearby gas station. *Id*.

At approximately 4:20 p.m., Contreras received a call from Bravo which is summarized follows : (Doc. 1 at ¶ 35).

> Bravo: "This shit has one thousand one hundred." Id.
> Contreras: "Two thousand one hundred, dude." Id.
> Bravo: "One thousand one hundred." Id.
> Contreras: "Oh fuck, then I made a mistake." Id.
> Bravo: "Yes you made a mistake." Id.
> Contreras: "Yeah, then right now when I come back, um, come here to Visalia. Right now." *Id*.

Bravo then departed from the gas station and traveled to 23522 Avenue 188, Strathmore, California. *Id*. Lopez entered the residence, then returned to the vehicle and arrived at the defendant property. *Id*. Based on knowledge and experience, detectives believe that when Bravo called Contreras and said, "the shit has only one thousand," Bravo stated that Contreras failed to pay Bravo the full amount. *Id*. When Contreras corrected Bravo and stated, "two thousand," Contreras disagreed with Bravo and claimed that the full amount was paid. *Id*. Bravo again corrected Contreras, and Contreras realized his mistake. *Id*. Contreras instructed Bravo to return to his residence for the full amount. *Id*.

At approximately 5:40 p.m., Contreras contacted the UC and negotiated the purchase of a half-pound of crystal methamphetamine in exchange for $10,000.00. (Doc. 1 at ¶ 36). Contreras instructed the UC to meet Contreras at the defendant property in about a half hour. *Id*.

At approximately 7:36 p.m., the UC arrived at the defendant property and met with Contreras who motioned the UC to follow him (Contreras) to the back of the defendant property. *Id*. Contreras reached between two hay bales lying on the ground and retrieved a plastic bag containing approximately 279 grams of crystal methamphetamine. *Id*. The UC removed the cover from a styrofoam cup and revealed $10,000.00 in prerecorded buy funds. *Id*. Contreras removed the money from the cup and placed it with the plastic baggie containing the crystal methamphetamine. *Id*. After a brief casual conversation, the UC entered his/her vehicle and departed the area. *Id*.

On September 10, 2009, a Grand Jury in the Eastern District of California indicted Ramon Contreras and Luz Villalvazo, with violations of 21 U.S.C. §§ 846 and 841(a)(1) - Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine and Aiding and Abetting, among other related charges.[2] (Doc.1 at ¶ 37). The federal criminal case of *United States v. Ramon Contreras, etal.*, 1:09-CR-00350-AWI, resolved with the sentencing of Ramon Contreras and LuzVillalvazo. On December 9, 2009, Ramon Contreras plead guilty to a violation of 21 U.S.C.§ 846 and 841(a)(1) – Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine and was sentenced to 57 months in custody and 60 months of supervised release. On March 15, 2010, Luz Villalvazo plead guilty to a violation of 18 U.S.C. § 4 – Misprison of a Felony, and was sentenced to 21 months in custody with 12 months of supervised release. Following completion of her sentencing, Luz Villalvazo was deported to Mexico.

**PROCEDURAL BACKGROUND**

On September 17, 2009, the Government filed a civil action *in rem* for the forfeiture of the defendant property pursuant to 21 U.S.C. § 881(a)(7). (Doc. 1). By separate order filed September 24, 2009, the undersigned authorized public notice of the action via the official internet

[2] In addition to Jorge Yovani Bravo, two other individuals were also indicted in this case : Irvin Rodriquez and Jose Jiminez.

government forfeiture site www.forfeiture.gov for at least 30 consecutive days. Publication in a manner consistent with the Court's order was made beginning October 16, 2009, and proof of such publication was filed with the Court on November 19, 2009. (Docs. 6 and 13).

In addition to providing notice by publication, On October 2, 2009, Ramon Contreras was personally served with copies of the Verified Complaint for Forfeiture *In Rem*, Notice of Complaint, Notice of Related Case, Application and Order for Publication, Lis Pendens, Order Setting Mandatory Scheduling Conference, Notice of Availability of Voluntary Dispute Resolution, Notice of Availability of a Magistrate Judge, and notice of forfeiture letter dated September 23, 2009. (Doc. 7).[3]

On November 12, 2009, Ramon Contreras and Luz Villalvazo (hereafter "Claimants"), through their counsel of record, J.M. Irigoyen, filed claims to the defendant property.(Doc. 11 and 12). On October 29, 2011, Claimants filed their Answers to the Complaint. (Doc. 35).

Following the entry of pleas and sentencing of both Claimants in the related criminal case, the United States requested that the stay on the civil case be lifted and that a scheduling conference be set. (Doc. 27). On July 26, 2011, after receiving no information from Claimants as to whether they agreed with the stay being lifted from the civil case, the Court lifted the stay and set a scheduling conference. (Doc. 30).

The United States filed its Scheduling Report with the Court, after receiving no participation from Claimants' counsel. (Doc. 32). A Scheduling Order was subsequently issued by the Court on September 7, 2011. (Doc. 34). On February 9, 2012, the United States sent an offer of settlement to Claimants' counsel. No answer was received in response to this offer.

[3] Pursuant to 18 U.S.C. § 983(a)(4)(A) and Rule G(5) of the Supplemental Rules, all claimants are required to file their claims with the Clerk of the Court within thirty-five (35) days after service of the complaint, or not later than sixty (60) days from the first day of publication on the official internet government forfeiture website, www.forfeiture.gov,whichever occurred first.

*See*, Declaration of Heather Mardel Jones in Support of Motion to Strike and Motion for Default Judgment (hereafter "Jones Decl."). (Doc. 47-1 at ¶ 8).

On April 6, 2012, the United States propounded upon each of the Claimants a set of Request for Admissions, a Request for Production of Documents, Interrogatories, and Special Interrogatories. *See,* Jones Decl. at ¶ 9. On April 25, 2012, the United States received correspondence from Claimants'counsel agreeing to a settlement of the civil case and asked that the United States forward the appropriate documents to effectuate settlement. *See*, Jones Decl. at ¶ 10.

On May 1, 2012, the United States sent a draft stipulation to Claimants' counsel reflecting the settlement agreed to between the parties. *See* Jones Decl. at ¶ 11. On May 22, 2012, a Stipulation for Final Judgment of Forfeiture was entered into by the United States of America and Claimant Ramon Contreras, however, no agreement was reached with Luz Villalvazo. *See*, Stipulation for Final Judgment of Forfeiture (Doc. 47-2).

On June 26, 2012, the parties filed a Notice of Settlement with the Court. (Doc. 36). On August 3, 2012, the parties requested a 30-day extension to file the dispositional documents because Claimants' counsel was making efforts to locate Luz Villalvazo. (Doc. 38). On September 13, 2012, the parties made a second request to extend the filing deadline because Claimants' counsel indicated he had found Luz Villalvazo and that it would be a matter of having her execute the necessary settlement papers. (Doc. 40). At the end of the 60-day extension, no settlement papers were provided by Luz Villalvazo. (See Jones Decl. at ¶ 17.)

Due to the failure by Luz Villalvazo to pursue her claim of ownership, on November 6, 2012, the United States requested an Order to Show Cause as to the Claimants, or in the alternative, requested that a scheduling conference be set so that the litigation could continue. (Doc. 42). An Order to Show Cause hearing was set for December 7, 2012. (Doc. 43).

On December 4, 2012, Claimants' counsel filed a declaration indicating that he is unable to locate Luz Villalvazo, but that Ramon Contreras executed the necessary settlement papers. (Doc. 44). At the Order to Show Cause hearing, Claimants' counsel confirmed his inability to locate Luz Villalvazo, listed the numerous manners in which he tried to find her, and requested more time to locate her. The Court continued the matter until January 18, 2013 to allow Claimants' counsel one more opportunity to contact Luz Villalvazo. (Doc. 45).

On January 18, 2013, a hearing was held. Claimants' counsel advised the Court that he had exhausted his options and he was unable to contact Luz Villanvazo despite all of his best efforts. He voiced no opposition to the Government's stated intent to move to strike her claim and answer. (Doc. 46). As a result, the United States filed the instant motions.

**DISCUSSION**

**A. Legal Standard**

Federal Rule of Civil Procedure 55(b)(2) provides that a court has discretion to enter default judgment against a party and provides as follows:

> (2) By the Court. In all other cases, the party must apply to the court for default judgment. A default judgment may be entered against an infant or incompetent person only if represented by a general guardian, committee, conservator, or other like fiduciary who has appeared. If the party against whom default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals - preserving any federal statutory right to a jury trial - when, to enter or effectuate judgment, it needs to : (A) conduct an account; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.

Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true. *Dundee Cement Co. v. Highway Pipe & Concrete Products, Inc*. 722 F.2d 1319, 1323 (7th Cir. 1983); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987).

In the context of an in rem forfeiture action, a court considering default judgment should also consider the procedural requirements set forth by the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983; the Supplemental Rules of Certain Admiralty and Maritime Claims ("Supplemental Rules"); and the court's Local Rules for Admiralty and in rem actions. *See, United States v. $191,910.00*, 16 F.3d 1051, 1069 (9th Cir.1994) (explaining that, because civil forfeiture is a "harsh and oppressive procedure which is not favored by the courts," the government carries the burden of demonstrating its strict adherence to procedural rules), *superseded by statute on other grounds*.

**B. Procedural Requirements**

**1. *Sufficiency of the Complaint***

Pursuant to the Supplemental Rules, the Government must file a verified complaint that states the grounds for jurisdiction and venue, describes the property being forfeited, identifies the statute under which the forfeiture action is brought, and includes sufficient factual detail to support a reasonable belief that the Government will be able to meet its burden of proof at trial. Fed.R.Civ.P. Supp. R. G(2). The verified complaint, states the grounds for subject matter jurisdiction, *in rem* jurisdiction, and venue, describes the property seized and the circumstances surrounding the seizure, and identifies the relevant statutes. (Doc. 1). In the absence of assertion of interests in the defendant property, the Court will not question the facts supporting its forfeiture. As alleged, the facts provide a sufficient connection between the defendant property and illegal drug activity to support a forfeiture.

**2. *Notice Requirements Involving Real Property***

In civil forfeiture cases involving real property, Congress has eliminated the need for the issuance and service of a warrant of arrest *in rem*. 18 U.S.C. § 985(c) (3) ("If real property has been posted in accordance with this subsection, it shall not be necessary for the court to issue an

arrest warrant *in rem*, or to take any other action to establish *in rem* jurisdiction over the property.") Instead, the United States may initiate a forfeiture action against real property by "posting a notice of the complaint on the property[.]" 18 U.S.C. § 985(c)(1)(B). The defendant property at issue was posted with the notice of this action on October 6, 2009. (Doc. 8).

**3. *Notice by Publication***

Subject to certain exceptions not present here, the Supplemental Rules also require the Government to publish notice of the forfeiture in a manner that is reasonably calculated to notify potential claimants of the action. Fed.R.Civ.P. Supp. R. G(4)(a)(iv). The content of the notice must describe the property with reasonable particularity, state the times to file a claim and to answer the complaint, and identify the name of the government attorney to be served with the claim and answer. Fed.R.Civ.P. Supp. R. G(4)(a) (ii)(A)-(C). This notice requirement may be satisfied by posting a notice on an official internet government forfeiture site for at least 30 consecutive days. Fed.R.Civ.P. Supp. R. G(4)(a)(iv) (C).

Here, publication occurred on the official internet government forfeiture site (www.forfeiture.gov) for 30 consecutive days beginning October 16, 2009. (Doc. 13.) A copy of the notice was attached to the Declaration of Publication, and it described the property with reasonable particularity. (Doc. 13, p. 3).The notice clearly stated the time requirements to file a claim and an answer. (Doc. 5, p. 3). Further, the notice provided the name of the attorney to be served with any claim and answer. (Doc. 13, p. 3). Thus, the Supplemental Rule's notice-content requirements have been satisfied. Fed.R.Civ.P. Supp. R. G(4)(ii)(A)-(C). Additionally, the notice was published for 30 consecutive days from October 16, 2009, through November 14, 2009, on the forfeiture website, which satisfies the Supplemental Rule's notice requirements with regard to frequency and means. (Doc. 13, p. 4).

///

**4. *Personal Notice***

When the Government knows the identity of the property owner, the Due Process Clause of the Fifth Amendment requires "the Government to make a greater effort to give him notice than otherwise would be mandated." *United States v. Real Property*, 135 F.3d 1312, 1315 (9th Cir.1998). In such cases, the Government must attempt to provide actual notice by means reasonably calculated under all circumstances to apprise the owner of the pendency of the forfeiture action. *Dusenbery v. United States*, 534 U.S. 161, 168 (2002); *see also* Fed.R.Civ.P. Supp. R. G(4)(b). "Reasonable notice, however, requires only that the [G]overnment attempt to provide actual notice; it does not require that the [G]overnment demonstrate that it was successful in providing actual notice." *Mesa Valderrama v. United States* 417 F.3d 1189, 1197 (11th Cir.2005); *Real Property*, 135 F.3d at 1316.

In this case, the Government personally served notice of the forfeiture action on Ramon Contreras and Luz Villalvazo. Accordingly, the personal notice requirements are not at issue. (Doc. 7).

**5. *The Time to File a Claim or an Answer***

Pursuant to the Supplemental Rules, any person who asserts an interest in or a right in a forfeiture action must file a claim with the Court within the time specified by the direct notice. Fed.R.Civ.P. Supp. G(4)(b)(ii)(B), (5)(a)(ii)(A). Failure to comply with the procedural requirements for opposing the forfeiture precludes a person from establishing standing in the forfeiture proceeding. *Real Property*, 135 F.3d at 1317. On November 12, 2009, Ramon Contreras and Luz Villalvazo ("Claimants") both filed claims to the defendant property. (Doc. 11, 12). On October 29, 2011, Claimants filed their Answer to the Complaint. (Doc. 35). Accordingly, these requirements were met.

///

**6.** ***The Motion to Strike Luz Villalvazo's Claim and Answer***

The Government has argued that Luz Villalvazo's Claim and Answer should be stricken because she has abandoned her claim. Plaintiff contends that Luz Villalvazo has done nothing to protect her interest in the defendant property, has not maintained contact with her attorney, nor has she taken any action to litigate this case. The Court agrees.

Although Ramon Contreras has entered into Stipulation of Final Judgment of Forfeiture, Luz Villalvazo has not done so. (Doc. 51). This Court has continued this matter several times to give Ms. Villalvazo's attorney an opportunity to contact her so that she could consider settlement negotiations. Ms. Villalvazo failed to attend two Order to Show Cause hearings after being ordered to personally appear.[4] (Docs. 43, 44, 45). Furthermore, her counsel has advised the Court he is unable to contact her despite numerous attempts to do so. Additionally, there has been no opposition filed to the instant motion.

Based on the above, the Court finds that Ms. Villalvazo has abandoned her claim as she has failed to prosecute this action. *See*, *United States v. Approximately $88,125.00 in United States Currency*, 2013 WL 310062 (W.D.N.C., Jan. 13, 2013) (Failure to produce discovery and failure to attend pretrial conference constitutes abandonment); *United States v. Reyes*, 2010 WL 547235 (E.D. Texas, Feb. 10, 2010) (Failure to attend ancillary forfeiture hearing resulted in dismissal based on abandonment of claims.). Accordingly, this Court will recommend that Ms. Villalvazo's Claim and Answer be stricken and the Clerk of the Court will be directed to enter default against Ms. Villalvazo.

**C.** ***The Eitel Factors Weigh in Favor of Granting Default Judgment***

The Government seeks judgment against the interests of Luz Villalvazo and also seeks final judgment of forfeiture against all known and unknown potential claimants. The

---

[4] The Court notes Ms. Villalvazo's attorney was served with notices of the OSC hearings as Ms. Villalvazo's whereabouts were unknown. Since Ms. Villalvazo is represented by counsel, this method of service is sufficient.

Supplemental Rules do not provide a procedure to seek default judgment in an action *in rem.* Supplemental Rule A provides: "The Federal Rules of Civil Procedure also apply to the foregoing proceedings except to the extent that they are inconsistent with these Supplemental Rules." When considering whether to enter default judgment under Fed. R. Civ. P. 55, courts consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the compliant; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy of favoring decisions on the merits. *Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cit.1986).

The discretionary *Eitel* factors outlined above favor granting the Government's motion for default judgment. First, the Government would be prejudiced by the denial of its motion, spending additional time and effort litigating an action in which the claimant has abandoned her claim. Second, the Government's claims appear to have merit. Third, as set forth above, the Government has adhered to the procedural requirements of a forfeiture action *in rem,* including the filing of a sufficient complaint. Fourth, the item that was seized and subject to forfeiture is not of such substantial value as to warrant denial of the Government's motion. Fifth, there are no genuine disputed issues of material fact. Sixth, there is no evidence that the abandonment is due to excusable neglect. Finally, although merits-based decisions are always preferred, it is not practical, as here, where claimant has abandoned her claims. Accordingly, there is no impediment to default judgment sought by the Government and the Court will recommend that the motion be granted.

///

///

///

///

## RECOMMENDATIONS

For the reasons discussed above, this Court RECOMMENDS that:

1. Luz Villalvazo's Claim and Answer be STRICKEN;

2. The Clerk of the Court shall enter default against Luz Villalvazo;

3. The Government's Motion for Default Judgment against the interests of Luz Villalvazo in the Defendant Property be granted;

4. The Clerk of the Court enter final forfeiture judgment against all known and unknown potential claimants; and

5. Within ten (10) days of service of an order adopting these findings and recommendations, the United States shall submit a proposed default and final forfeiture judgment consistent with the findings and recommendations and order adopting them. The United States shall also submit a final judgment of forfeiture related to the stipulation for final judgment of forfeiture between the government and Claimant Ramon Contreras.[5]

These Findings and Recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304. Within **fifteen (15)** days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's Findings and Recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to

[5] Any reference to Luz Villalvazo shall be omitted from the final judgment of forfeiture based on the stipulation between the government and Ramon Contreras.

appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **July 15, 2013**

**/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE